**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE PROTECT DEMOCRACY PROJECT, INC.<br>2020 Pennsylvania Avenue, NW, #163<br>Washington, DC 20006,<br><br>        Plaintiff,<br><br>    v.<br><br>U.S. NATIONAL SECURITY AGENCY<br>9800 Savage Road<br>Fort Meade, MD 20755,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## COMPLAINT

Plaintiff The Protect Democracy Project, Inc. (hereinafter "Protect Democracy") brings this action against Defendant the National Security Agency to compel compliance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552.  Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

### PARTIES

3. Plaintiff The Protect Democracy Project, Inc. is an organization awaiting 501(c)(3) status, incorporated under the laws of the District of Columbia, and located at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.  Plaintiff's mission is to protect our democracy from descending into a more autocratic form of government by preventing those in

power from depriving Americans of a free, fair, and fully-informed opportunity to exercise ultimate sovereignty.  As part of this mission, Plaintiff seeks to inform public understanding of operations and activities of the government by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities.  Plaintiff regularly requests such information pursuant to FOIA.  Plaintiff intends to give the public access to documents transmitted via FOIA on its website, www.protectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

4. Defendant U.S. National Security Agency (NSA) is an agency of the executive branch of the federal government of the United States.  Defendant NSA is headquartered at 9800 Savage Rd., Fort Meade, MD 20755.  Defendant has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA request.

## STATEMENT OF FACTS

*President Trump's Apparent Attempts to Interfere in the FBI's Investigation of His Campaign's Role in Russian Interference in the 2016 Election*

5. On January 6, 2017, the United States intelligence community (IC) released a report entitled "Assessing Russian Activities and Intentions in Recent US Elections."  The declassified version of the report includes an "analytic assessment drafted and coordinated among The Central Intelligence Agency (CIA), The Federal Bureau of Investigation (FBI), and The National Security Agency (NSA)."  In the report, the agencies, including the NSA, "assess[ed] Putin and the Russian Government aspired to help President-elect Trump's election chances when possible by discrediting Secretary Clinton and publicly contrasting her unfavorably to him."

6. On March 20, 2017, FBI Director James Comey confirmed in testimony before

the House Intelligence Committee that the FBI was investigating Russian interference in the 2016 election and any coordination between Russia and the campaign of President Donald Trump. Comey stated that he had "been authorized by the Department of Justice to confirm that the FBI, as part out our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government, and whether there was any coordination between the campaign and Russia's efforts."

7.      On May 9, President Trump fired FBI Director James Comey. In his note to Comey, Trump stated: "I greatly appreciate you informing me, on three separate occasions, that I am not under investigation."

8.      On May 10, Trump met in the Oval Office with officials of the Russian government, including Ambassador Sergey I. Kislyak and Foreign Minister Sergei V. Lavrov. Upon information and belief, a document summarizing the meeting states that Trump told the Russian officials: "I just fired the head of the F.B.I. He was crazy, a real nut job." That document further states that Trump said in the meeting: "I faced great pressure because of Russia. That's taken off."

9.      In a television interview on May 11, 2017, Donald Trump told journalist Lester Holt that he had decided to fire Comey before meeting with Attorney General Jeff Sessions and Deputy Attorney General Rod Rosenstein to discuss whether to fire Comey. According to Trump: "And in fact when I decided to just do it, I said to myself, I said you know, this Russia thing with Trump is a made up story."

10.     On May 22, 2017, the *Washington Post* published an article by journalists Adam Entous and Ellen Nakashima entitled "Trump asked intelligence chiefs to push back against FBI

collusion probe after Comey revealed its existence." The article states: "President Trump asked two of the nation's top intelligence officials in March to help him push back against an FBI investigation into possible coordination between his campaign and the Russian government, according to current and former officials." It explains that "Trump made separate appeals to the director of national intelligence, Daniel Coats, and to Adm. Michael S. Rogers, the director of the National Security Agency, urging them to publicly deny the existence of any evidence of collusion during the 2016 election."

11. The article further states: "Trump's conversation with Rogers was documented contemporaneously in an internal memo written by a senior NSA official, according to the officials." At a minimum, the referenced memo should now be easy to find and produce, and it is of paramount public interest as it may represent an attempt by the President to use the powers of the intelligence community to interfere in an investigation into his or his associates' own potential wrongdoing.

*FOIA to NSA and Agency's Failure to Respond*

12. On April 21, 2017, Plaintiff sent a FOIA request to Defendant NSA seeking the following records:

> Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, The Protect Democracy Project hereby requests that your office produce within 20 business days the following records (see below for clarity on the types of records sought):
>
> 1) All records, including but not limited to emails, notes, and memoranda, reflecting, discussing, or otherwise relating to communications between the National Security Agency and the Executive Office of the President regarding contacts between individuals connected with the Russian government and individuals connected with the Trump campaign or the Trump administration, and/or Russian involvement with, or attempts to influence or interfere with, the national election of November 2016.
>
> 2) All records, including but not limited to emails, notes, and memoranda, reflecting, discussing, or otherwise relating to talking points or other communications with

4

the public or the media regarding contacts between individuals connected with the Russian government and individuals connected with the Trump campaign or the Trump administration, and/or Russian involvement with, or attempts to influence or interfere with, the national election of November 2016.

3) All records, including but not limited to emails, notes, and memoranda, reflecting, discussing, or otherwise relating to communications between the National Security Agency and the House Permanent Select Committee on Intelligence (HPSCI) and/or the Senate Select Committee on Intelligence (SSCI), and/or Representative Devin Nunes, Representative Adam Schiff, Senator Richard Burr, Senator Mark Warner, and/or any other members or staff of HPSCI or SSCI, regarding contacts between individuals connected with the Russian government and individuals connected with the Trump campaign or the Trump administration, and/or Russian involvement with, or attempts to influence or interfere with, the national election of November 2016.

4) All calendars, agendas, manifests, schedules, notes, lists of attendees, or other records reflecting or relating to meetings regarding contacts between individuals connected with the Russian government and individuals connected with the Trump campaign or the Trump administration, and/or Russian involvement with, or attempts to influence or interfere with, the national election of November 2016.

5) In addition to the records requested above, we also request records describing the processing of this request, including records sufficient to identify search terms used and locations and custodians searched, and any tracking sheets used to track the processing of this request. If your agency uses FOIA questionnaires or certifications completed by individual custodians or components to determine whether they possess responsive materials or to describe how they conducted searches, we also request any such records prepared in connection with the processing of this request.

The timeframe for this request is July 1, 2016 through the date that searches are conducted for records responsive to this FOIA request.

*See* Exhibit A (NSA FOIA request).

13.     Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *See* Exhibit A.

14.     Plaintiff's request was submitted to the NSA by fax on April 21, 2017.

15.     Plaintiff received a letter from Defendant NSA dated May 1, 2017.  The NSA letter stated that Plaintiff's FOIA request had been received on April 24, 2017.  *See* Exhibit B.  It

further stated: "This letter acknowledges that we have received your request and provides some administrative information." It explained "we are experiencing delays in processing" and that "[w]e will begin to process your request and will respond to you again as soon as we are able." The NSA response letter noted that "we have not addressed . . . your request for a fee waiver at this time."

16. Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request – that is, no later than May 22, 2017 – Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," and, in the case of an adverse determination, Plaintiff's appeal rights. 5 U.S.C. § 552(a)(6)(A)(i).

17. To date, Defendant has failed to make the required determination and notifications. Nor has Defendant made a determination regarding Plaintiff's request for a fee waiver.

**COUNT I**
**(Violation of FOIA, 5 U.S.C. § 552)**

18. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

19. Defendant is in violation of FOIA by failing to respond to Plaintiff's request within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiff's request.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's request;

(2) Order Defendant, by a date certain, to demonstrate that it has conducted an adequate

search;

(3) Order Defendant, by a date certain, to produce to Plaintiff any and all non-exempt records or portions of records responsive to Plaintiff's request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(4) Enjoin Defendant from improperly withholding records responsive to Plaintiff's request;

(5) Order Defendant to grant Plaintiff's request for a fee waiver;

(6) Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7) Grant Plaintiff such other relief as the Court deems appropriate.

Respectfully submitted,

Date:  May 24, 2017            */s/ Michael P. Abate*

Michael P. Abate
  (DDC Bar No. MD28077)
  (DC Bar No. 1023343)
Kaplan & Partners LLP
710 W. Main St., 4th Floor
Louisville, KY 40202

Benjamin L. Berwick (MA Bar No. 679207)
Anne Tindall (DC Bar No. 494607)
Counsel
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave., NW #163
Washington, DC 20006
Phone: 202-599-0466
Fax: 929-777-8428

*Counsel for Plaintiff*