## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY PROJECT,
INC.,

          Plaintiff,

    v.

U.S. NATIONAL SECURITY AGENCY,

          Defendant.

Civil Action No. 17-1000 (CKK)

## MEMORANDUM OPINON
(March 6, 2020)

This case involves a Freedom of Information Act ("FOIA") request submitted by Plaintiff the Protect Democracy Project, Inc. to Defendant National Security Agency ("NSA"). Pending before the Court are Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 34, and Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 35. For the reasons below, the Court finds that in camera review of the document relating to the Project's FOIA request is necessary to make a responsible de novo determination on the claims of exemption.

The current focus of the parties' dispute is a memorandum memorializing a telephone conversation between President Donald Trump and former NSA Director Admiral Michael Rogers. *See, e.g.*, Def.'s Stmt. of Material Facts as to Which There Is No Genuine Issue ("Def.'s Stmt."), ECF No. 34, ¶¶ 21–22; Pl.'s Stmt. of Undisputed Material Facts in Support of Mot. for Summ. J. ("Pl.'s Stmt."), ECF No. 35-1, ¶ 67, 69–70. The memorandum was drafted by Rick Ledgett, the former Deputy Director of the NSA, and is therefore referred to as the "Ledgett Memorandum." *See* Def.'s Stmt. ¶ 21; Pl.'s Stmt. ¶ 48. NSA originally issued a *Glomar* response declining to confirm or deny the existence of the requested documents. Def.'s Stmt. ¶ 9; Pl.'s Stmt. ¶¶ 58–59.

Then, on April 18, 2019, the Department of Justice released a partially redacted report drafted by Special Counsel Robert Mueller (the "Mueller Report").  Def.'s Stmt. ¶ 11; Pl.'s Stmt. ¶ 43.  Volume II of the Mueller Report described a document that appeared to be responsive to the Project's Second Amended FOIA Request.  Def.'s Stmt. ¶ 13; Pl.'s Stmt. ¶¶ 46–48.  The relevant portion of the Report reads:

> On March 26, 2017, the day after the President called [Director of National Intelligence Daniel] Coats, the President called NSA Director Admiral Michael Rogers.  The President expressed frustration with the Russia investigation, saying that it made relations with the Russians difficult.  The President told Rogers "the thing with the Russians [wa]s messing up" his ability to get things done with Russia. The President also said that the news stories linking him with Russia were not true and asked Rogers if he could do anything to refute the stories.  Deputy Director of the NSA Richard Ledgett, who was present for the call, said it was the most unusual thing he had experienced in 40 years of government service.  **After the call concluded, Ledgett prepared a memorandum that he and Rogers both signed documenting the content of the conversation and the President's request, and they placed the memorandum in a safe**.  But Rogers did not perceive the President's request to be an order, and the President did not ask Rogers to push back on the Russia investigation itself.  Rogers later testified in a congressional hearing that as NSA Director he had "never been directed to do anything [he] believe[d] to be illegal, immoral, unethical or inappropriate" and did "not recall ever feeling pressured to do so."

*Report on the Investigation into Russian Interference in the 2016 Presidential Election*, *available at* https://www.justice.gov/storage/report.pdf, at 268–69[1] (emphasis added) (footnotes omitted).

Following the release of the Mueller Report, NSA withdrew its *Glomar* response.  Def.'s Stmt. ¶ 16; Notice of Withdrawal of *Glomar* Response, ECF No. 31.  Now, NSA has withheld the memorandum under FOIA.  It primarily argues that the Ledgett Memorandum was properly withheld under FOIA Exemption 5 because it is protected by the presidential communications

---

[1] The page numbers referenced here are the page numbers of the entire report, which is in Portable Document Format ("PDF") and is not consecutively paginated.  This quotation is found on pages 56–57 of Volume II.

privilege. Def.'s Mot. at 8–15. It further argues in the alternative that FOIA Exemptions 1, 3, and 6 also justify withholding specific portions of the memorandum. *Id.* at 15–29.

In response, the Project argues that the presidential communications privilege does not extend to the Ledgett Memorandum and, moreover, that NSA has waived reliance on the privilege and/or officially disclosed the information at issue here. Pl.'s Mot. at 13–21. In particular, the Project contends that the Mueller Report's description reproduced above was an official disclosure of the relevant information contained within the Ledgett Memorandum sufficient to preclude the application of the presidential communications privilege. *Id.* at 20–21. The Project also contests NSA's withholding of information under Exemptions 1, 3, and 6. *Id.* at 21–28.

Some background on Exemption 5 provides context for why in camera review is warranted in this case. Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "To qualify [for this exemption], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Over the years, it has been construed as protecting "those documents, and only those documents, normally privileged in the civil discovery context." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Available privileges include the presidential communications privilege. *Judicial Watch, Inc. v. U.S. Dep't of Defense* (*Judicial Watch II*), 913 F.3d 1106, 1109 (D.C. Cir. 2019).

That privilege ensures that the President can receive "frank and informed opinions from his senior advisers" who may otherwise "'be unwilling to express [those views] except privately.'"

*Id.* at 1110 (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)).  The shelter of this privilege is "properly invoked with respect to 'documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential.'" *Id.* at 1111 (quoting *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997)).  And it can be invoked by not only the President, but also his advisors, to insulate their communications "in the course of preparing advice for the President . . . even when these communications are not made directly to the President." *Id.* (alteration in original) (quoting *In re Sealed Case*, 121 F.3d at 751-52).  The standard is whether the documents were "'solicited and received' by the President or his immediate White House advisers who have 'broad and significant responsibility for investigating and formulating the advice to be given the President.'" *Judicial Watch, Inc. v. Dep't of Justice* (*Judicial Watch I*), 365 F.3d 1108, 1114 (D.C. Cir. 2004) (quoting *In re Sealed Case*, 121 F.3d at 752).  This privilege "'should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decision-making process is adequately protected.'" *Id.* at 1116 (quoting *In re Sealed Case*, 121 F.3d at 752).  "Unlike the deliberative process privilege . . . the presidential communications privilege . . .'applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.'" *Id.* at 1113–14 (quoting *In re Sealed Case*, 121 F.3d at 745).

The Project argues that the Ledgett Memorandum cannot be withheld under Exemption 5 because the information contained in it—or at least some of that information—has already been officially disclosed and/or acknowledged.  "If the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim." *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 620 (D.C. Cir. 2011).  Information must satisfy three criteria to qualify as officially acknowledged:

"(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Id.* at 620–21.  But, "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption." *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007).  "Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure."  *Id.* (emphasis in original). "The insistence on exactitude recognizes the Government's vital interest in information relating to national security and foreign affairs." *Id.* (internal quotation marks omitted).

Accordingly, the Court must evaluate not only whether the Ledgett Memorandum qualifies for the presidential communications privilege, but also whether the contents of the memorandum satisfy the above disclosure/acknowledgement criteria.  Complicating this evaluation is the fact that, in general, the presidential communications privilege extends to documents in their entirety. *See Judicial Watch I*, 365 F.3d at 1113–14.  In this case, however, the Project appears to suggest that is not the case, or should not be the case, when some of the contents have been officially acknowledged or disclosed.  *See, e.g.*, Pl.'s Reply Brief in Support of Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 39, at 5 n.2 (arguing that construing presidential communications privilege narrowly when part of document has been acknowledged means that privilege cannot extend to entire document).

In light of the above arguments and legal principles, making a responsible de novo determination of NSA's exemption claims requires in camera review.  "FOIA provides district courts the option to conduct in camera review, but 'it by no means compels the exercise of that

5

option.'" *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (internal citations omitted) (quoting *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008)).   In camera review is appropriate when such review is necessary for a district court "to make a responsible de novo determination on the claims of exemption."  *Juarez*, 518 F.3d at 60 (internal quotation marks omitted).  "When the agency meets its burden by means of affidavits, in camera review is neither necessary nor appropriate."  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  But "affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  *Id.*  "*In camera* inspection is particularly a last resort in national security situations like this case—a court should not resort to it routinely on the theory that it can't hurt."  *Larson*, 565 F.3d at 870 (internal quotation marks and citations omitted).  Still, "district courts possess broad discretion regarding whether to conduct *in camera* review."  *Id.*

Here, NSA has submitted two affidavits.  First is the Declaration of Linda M. Kiyosaki, the then-Acting Chief of Policy, Information, Performance, and Exports at NSA.  *See* Kiyosaki Decl., ECF No. 34-1, at ¶ 1.  She explains that the Mueller Report did not "disclose the statements made by President Trump or NSA's then-Director Rogers during the phone call."  *Id.* ¶ 28.  Moreover, she explains that the Ledgett Memorandum addresses "topics of conversation not described in the Mueller report."  *Id.*  NSA also submitted the Declaration of Steven E. Thompson, the Chief of Policy, Information, Performance, and Exports at NSA.  *See* Thompson Decl., ECF No. 37-1, at ¶ 1.  In the declaration, he explains that "the Ledgett memo includes significant information and details not described in the Mueller report."  *Id.* ¶ 12.  He further states that the memorandum "includes discussions between Admiral Rogers and President Trump related to Russia, which were described in part, but not in their entirety, by the Mueller report."  *Id.*  These

statements are insufficient to make a responsible de novo determination on the exemption claims in light of the Project's disclosure or acknowledgement argument; in camera review of the material at issue is warranted.

NSA contends that in camera review is inappropriate. It argues that "the appropriate remedy would be to provide NSA the opportunity to submit a supplemental declaration answering any questions the Court may have."[2]   Def.'s Reply in Support of Its Mot. for Summ. J. and Opp'n to Pl.'s Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF No. 37, at 13–14. It is true that in camera review should not be done as a matter of course, especially in cases like this one, where the declarations indicate that discussions regarding national security issues are memorialized in the Ledgett Memorandum. However, the statements in the affidavits recited above are too broad and vague to determine whether the Ledgett Memorandum, or portions of it, were properly withheld. Nor is it clear how additional affidavits would correct this issue with sufficient specificity in light of the parties' arguments. For example, the Court must consider whether the relevant information in the Ledgett Memorandum has been officially acknowledged, which requires close comparison of the relevant information disclosed in the Mueller Report and the relevant information contained in the Ledgett Memorandum. *See Wolf*, 473 F.3d at 378 (describing application of test). The

---

[2] NSA cites upon two cases in making this assertion: *Property of the People, Inc. v. Office of Management and Budget*, 330 F. Supp. 3d 373 (D.D.C. 2018), and *American Center for Law & Justice v. U.S. Dep't of State*, 330 F. Supp. 3d 293 (D.D.C. 2018). Def.'s Reply at 13–14. Neither case, however, addresses whether in camera review was appropriate. In *Property of the People*, the court found that the government had not satisfied its burden to show that the privilege applied and allowed the government to "file a renewed motion for summary judgment" with "supplemental declarations and other materials supporting its claimed exemption." 330 F. Supp. 3d at 390. That situation is inapposite. The same is true of *American Center for Law & Justice*, in which the court allowed the agency to provide additional information about a certain document because it had failed to provide sufficient information. 330 F. Supp. 3d at 304. While the courts in both cases allowed the government to provide additional information via affidavits, neither case suggested that in camera review is inappropriate under these circumstances.

affidavits do not provide enough detail on the latter for the Court to make a responsible de novo determination.  Revealing enough of those contents via additional affidavits filed on the public docket to facilitate that determination may not be possible and is also problematic for the same reasons that NSA argues the memorandum should be withheld.

Accordingly, in camera review of the Ledgett Memorandum is necessary to make a responsible de novo determination on the claims of exemption.  NSA shall present the memorandum to the Court for in camera review.  Both affidavits submitted by NSA explain that certain information in the Ledgett Memorandum is classified.  *See* Kiyosaki Decl. ¶¶ 16–20; Thompson Decl. ¶ 9.  NSA will furnish to the Court the Ledgett Memorandum in an accordingly appropriate manner and may contact the Court suggesting the preferred method of delivering the Ledgett Memorandum for the Court's in camera review.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 6, 2020                        _____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge